First case is Butts v. Kelch for the appellate. Yes, you're representing Ms. Butts. Yes, you can. Oh, okay. I misunderstood you. I thought you said the submissions would be taken first. Oh, no, no. I'm sorry. I think we're ready. We'll proceed with the first case. Okay. And you may proceed with your argument. Your Honor, I'll be very brief. The first point I wish to make is that we did not appeal against the dismissal of the union, and we are not contesting that dismissal. The dismissal of which? Of the union. The union. The union. The union defendants. We did not appeal that, and we are not contesting that. Our problem is with the dismissal of the two individuals, the principal and the assistant principal, who seem to have made Ms. Butts their subject in the school. The police counsel made heavy weather of this court's decision in Novkoski, I'm sorry I'm mispronouncing it, versus Norris, regarding the distinction between the standard in 807 as distinct from the standard of proof in Section 1983, the but-for standard. But my submission is that this case is distinguishable from that. The case that counsel referred to, which this court decided, dealt with evidentiary standard. It is a Section 56 motion that gave rise to that. Here, we are dealing with pleading standard, which is a completely different thing. Did we plead short and simple claim that will entitle us to relief, or that will entitle us to lead or adduce evidence in support of the claim? That is all that our claim is about. I believe that our third amendment complaint shows that we did. That is the first point I wish to make. The second point is related. It's the issue of whether a person could rely on discrimination against another person to assert a claim for retaliation. By the way, the but-for also, one other point in respect of the but-for. That case relates to discrimination. I do not read it as having anything to do with retaliation, so that our claims in retaliation here have nothing to do with that case as well. I'm sorry. Which case are you referring to, sir? It's Naumovsky v. Norris, 934F3D, 200. Thank you. Yeah. So, one, it has nothing to do with retaliation. Two, it's a case that dealt with evidentiary standard. We haven't gotten there yet. No discovery has been done here, let alone deposition. No paper discovery, nothing. So that case is distinguishable on that ground. We are entitled to lead evidence to show whatever it shows, then that is what it is. It's at the end of that that the standard of but-for will then apply, depending on what the evidence shows. Can I ask a question? The city says, with some plausibility, that the crux of your client's complaint is that the two principals here conspired with the union to retaliate against your client because of all her grievances and all her complaints and advocacy for a disabled student, that this isn't a discrimination claim based on race, sex, or national origin. So can you just explain how does the complaint show us that this is plausibly about race, sex, or national origin? Okay. There are two points. There are specific individuals who I mentioned, Victor Kallik, who was paid possession when my client was undergoing, when he and my client were supposed to be undergoing professional development. And he did not attend professional development and was paid possession. My client wasn't paid possession. Of course, Victor Kallik is male. My client is female. I didn't see any allegation about Mr. Kallik's job position. What was his job position? I wanted to understand why you seem to be alleging that they were similarly situated and, therefore, we should infer that she was treated differently, your client was treated differently just on the basis of race or gender. I concede that we did not specifically mention his job there, but they worked under the same principle, in the same school, subject to the same professional development. But for us to make sure that they're similarly situated, you have to describe what he was doing, what his responsibilities were, at least in some way, I think. So you agree that your complaint didn't have those kinds of allegations. You just identified him by name? I did say, I just said here that we did not specifically say what job he was doing. You did not say what job he was doing. That's the only thing. Otherwise, in every other respect, we plead that he worked there, he worked under the same principle, supervised by the same principle, was supposed to attend professional development, like my client, did not attend, and was paid even whilst my client was attending. So I don't know that whether, in fact, I don't know how material his job, whether he's a teacher or something else, will have to do with the fact that he was supposed to attend the same professional development that my client was supposed to attend, and did attend, and he did not, and was paid. I don't see what difference it would make if he was a cleaner or a teacher or something else. I think that the sufficient- So you don't think if they had different job responsibilities, there might be different attendant requirements about attending or being paid or not paid? No, I don't believe so, because possession is something that's supposed to work for possession, not when you're supposed to be attending a school, something that is required by the school, and you don't attend it, and yet you are paid. Thank you. The other two points are interrelated. That is, it's the point of whether my client could, based on the discrimination that was not directed at her, but at her student, could bring a claim for retaliation based on that. I mean, the complaints replete with complaints filed, and even informal complaints have been recognized by this court and the Supreme Court as being sufficient to trigger retaliation. My client filed complaints after complaints regarding the treatment which this disabled student was getting from the school, which constitutes a violation of the law, that they're denying the things that was said should be given to her, and my client complained. And following that, my client was retaliated against, and we identified the retaliation that my client underwent. There's case law both in this circuit and the Supreme Court saying that a person could bring a claim of retaliation based on discrimination that was not directed against her originally, but against somebody else. Then with regard to one other point they made, which is the issue of we did not specifically invoke the ADA, I believe that was settled by the Supreme Court in the case of Johnson versus the city of Shelby, Mississippi, which is 135 Supreme Court 346. In that case, a similar thing happened. It was in 1983. They made the claim, but they did not specifically invoke 1983. And the defendant made every word of this, and the Fifth Circuit affirmed. The Supreme Court summarily reversed, saying they did not have to, if the facts show that they entitled to relief, they did not have to specifically mention a statute. By parity of reasoning, in this case, we did not specifically have to show, to mention ADA when we said we were fighting for disabled students subject to ADA and all that. And this happened to us. I think we've said, however, that for a retaliation claim to survive under Section 1983, the underlying complaint that was retaliated against her allegedly must involve some deprivation of constitutional rights. And disability is not recognized as a suspect class under the Equal Protection Clause. So am I missing something? No, that is correct. That's not our contention. Our contention is that because this constitutes discrimination against somebody under ADA, even though we did not specifically invoke ADA, but the facts are there to show that this person is a disabled person. And the case of Johnson and city of Shelby supports that, that you do not have to specifically we don't have to say we're also bringing this case under ADA. But even the interesting thing in the Shelby case, in the Johnson case, is that they said, well, just to avoid any doubt, when we remand, they should specifically mention Section 1983 to avoid all problems. So if that is their problem, then upon remand, we'll just put in ADA. And that will be the end of it. I'm prepared to take whatever questions the Court may have. Those are the points I felt should be emphasized. And whatever questions the Court wants to ask, I'll answer. Now you've reserved five minutes of rebuttal. Of course. So we'll hear from your colleague on the other side. Thank you.  Good morning, Your Honors. May it please the Court, Jonathan Poplow for the City Appellees. I did just want to stress at the outset that I believe that there's no longer a dispute that the Monell claims against the Department of Education were properly dismissed. I don't understand that they didn't make it. Can you speak up just a little bit? Of course, Your Honor. Thank you. I think there's no longer any dispute that the Monell claims against the Department of Education were properly dismissed, and they're not challenging that dismissal anymore. It's just the claims, the dismissal of the 1983 claims against the two individual defendants. To respond to my adversary's arguments, I can maybe go sort of backwards from the order that he put them forth in. With respect to ADA, the relevance of the EEOC charge is that, well, first of all, there is no ADA claim asserted here, and we're talking about a third amended complaint. So, you know, I'm not really sure that they should be given an opportunity to do a fourth amended complaint where there was never any attempt at any stage in this to say, well, let me amend to add an ADA claim. The relevance of the EEOC charge is that they never made one within 300 days of this. So even if you were to allow them to assert an ADA claim, it would be futile because it would be barred because they didn't assert, they didn't file, they didn't bring it. I don't think they ever asserted an EEOC charge here. You have to do that within 300 days. We don't usually require exhaustion to be pled in a complaint, though, do we? I'm not sure. I think it depends. I think that's an element of the cause of action. I don't, I unfortunately don't know the answer in this specific circumstance, Your Honor, but I'm not willing to concede that it's in this one. I think we have. Okay. Go ahead. Understood, Your Honor. But also the case that they're relying on here, this Johnson case, that was one where they, it was more sort of the court was taking a sort of we're not going to require a formality here. You're alleging a deprivation of constitutional rights. You're doing that. You don't have to invoke the magic word section 1983, but they were bringing a 1983 claim. So I think it's really different for that reason also. And as you said, they're an amended complaint. Correct, Your Honor. To jump forward a little bit to the argument about the standard of causation, they're not disputing that the standard of causation here, because it's a 1983 claim, is it has to be but-for causation. It can't just be a motivating factor for like it can be in a Title VII claim. And I think that the distinction between a summary judgment at Rule 56 and Rule 12b6 is irrelevant here because you still have to plead the relevant causation standard. You don't have to have any evidence for it at the time you're pleading it, but you still have to plead it properly. And the complaint, as you noted, Your Honor, is replete with allegations that, you know, the reason this happened was because, you know, I was retaliated against for, or I was discriminated against for bringing all these grievances with the union. So the allegations themselves, which are taken as true, show at best a mixed motive. I mean, I don't think that even, you know, I don't think there's anything more than a summary attribution of discriminatory animus here. But your brief on appeals says that there can be only one but-for test, and that's not right, I don't think. I mean, the Supreme Court said in Bostick expressly that there can be two but-for causes of some event in the world. So if that's right, then why isn't that the case? Why isn't a discrimination claim or retaliation claim on the basis of race, sex, or national origin plausibly plagued? I guess two things. I'm not quite sure how that ties in with the Section 1983 claim or whether that's more in the context. Like, for example, and I apologize, I'm not remembering what statute Bostick was brought under, but it may hinge on the difference that this is an equal protection claim. It's not a, you know, for example, the causation standard under the ADA, I believe, is but-for, and also the Age Discrimination Employment Act is but-for. So maybe when you have a statutory cause of action like that, you could have more than one but-for causation, but not in a situation here where you're bringing a constitutional claim and it's equal protection. And also the district court, and I think correctly, just found that even under a lesser pleading standard, that it didn't raise an inference of discriminatory animus. And I think just to give sort of one example that mentioned Mr. Kerlik, I think it's notable that the only thing in the complaint about Mr. Kerlik is that she, Ms. Butts claims she was retaliated against for complaining about him getting his payments. There's actually no allegation of disparate treatment based on sex in the complaint. That's only in the brief. So it's, you know, the brief faults the district court for not mentioning this, but you can't really fault the district court for not addressing a claim that's not made in the complaint. And I think that is pretty much everything I wanted to say, Your Honors. Are there any further questions? Thank you. Good morning, Your Honors. May it please the Court. Arianna Dinellon on behalf of Union Appellees. I thank the Court for granting me permission to participate in today's arguments and to file a brief in this matter. Appellant's notice of appeal explicitly limits the scope of the instant appeal to the district court's decisions to the extent that they relate to the New York City Department of Education and the other city appellees. However, to the extent that her argument regarding Defendant's Rule 12b1 motion could be construed against the Union Appellees, who move to dismiss Appellant's claims pursuant to the Labor Management Relations Act under Rule 12b1, we oppose the instant appeal and argue in support of the affirmance of the district court's dismissal of the third amended complaint. We do appreciate that counsel has clarified here today that Appellant does not contest the dismissal of her claims against the Union Appellees. Therefore, I will rest on my written submissions, absent any questions from this Court. Thank you very much. Thank you. Thank you very much, Your Honors. We'll hear rebuttal. I think I'm clear about this, but were you intending to assert any claims against the Union and against U of T? Sorry, Your Honor. I didn't hear you. Were you intending to assert any claims against the Union? I asserted it, and then when it was dismissed, I'm not arguing it here. I'm conceding that. I believe that was my opening statement, that we didn't appeal it and we're not contesting it. Going back to the point that counsel made with regard, Kolek is only one example that we give. There are examples here. For instance, my client engaged with Brutus in the same action, sharing lunch together. Mr. Brutus was only warned, and Ms. Butts was suspended for five days without pay for the same exact thing. So we say that is, for me, I don't see any other way to look at it other than that it could constitute retaliation, but it's also discrimination on the basis of her gender, because there's no reason to treat them differently. So that's a – and we also mentioned the case of Yogi Zuma – sorry, Yosie Kuma, Ethiopian-born. My client is United States-born. I mean, we made that distinction. So I'll just leave it at that. Every other point, I believe, is well articulated in our brief. Thank you very much. Thank you, Paul. Thank you all. Interesting case. Thank you. And we will take the matter under advisement.